Scott M. Lempert (SL 4238)
(A Member of the Bar of this Court)
SANDALS & ASSOCIATES, P.C.
One South Broad Street, Suite 1850
Philadelphia, PA 19107
Tel:  (215) 825-4011 / Fax:  (215) 825-4001

Lynn Lincoln Sarko
Gretchen Freeman Cappio
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Tel:  (206) 623-1900 / Fax:  (206) 623-3384

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY 10003
Tel: (646) 495-6198 / Fax: (646) 495-6197

Todd S. Collins
Neil F. Mara
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000 / Fax:  (215) 875-4604

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER CROUCH, individually and on behalf of all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; KIMBERLY CLARK CORPORATION; and WAL-MART STORES, INC., ) <br> ) <br> ) <br> Defendants. ) <br> ) | No. <br><br> CLASS ACTION COMPLAINT <br><br> JURY DEMAND |

Plaintiff Jennifer Crouch, individually and on behalf of all others similarly situated, alleges the following based upon information and belief, and upon the investigation of counsel:

**<u>INTRODUCTION</u>**

1.      This class action is brought by Plaintiff individually and on behalf of all purchasers ("Class Members") of Johnson's Baby Shampoo, Johnson's Moisture Care Baby Wash, Aveeno Baby Soothing Relief Creamy Wash, Equate Tearless Baby Wash, and Huggies Soft Skin Shea Butter Baby Wipes (collectively "Children's Personal Care Products").  The Children's Personal Care Products were manufactured by: Johnson & Johnson Consumer Companies, Inc. ("J&J") whose principal place of business, upon information and belief, is One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933; Wal-Mart Stores, Inc. ("Wal-Mart") whose principal place of business, upon information and belief, is 702 SW 8th St., Bentonville, Arkansas 72716; and Kimberly Clark Corporation ("Kimberly Clark") whose principal place of business, upon information and belief, is 351 Phelps Drive, Irving, Texas 75038.

2.      Although Defendants represented that the products they made, marketed, and sold were safe for children, upon information and belief, the Children's Personal Care Products were contaminated with toxic chemicals linked to increased cancer risk, skin allergies, and other health problems.  These harmful chemicals include formaldehyde and 1,4-dioxane, as well as other potential contaminants.  As noted above, the contaminated bath products include: Johnson's Baby Shampoo (a J&J product), Johnson's Moisture Care Baby Wash (a J&J product), Aveeno Baby Soothing Relief Creamy Wash (a J&J product), Equate Tearless Baby Wash (a Wal-Mart product), and Huggies Soft Skin Shea Butter Baby Wipes (a Kimberly Clark product). Simply put, these products are not the safe, healthful items they are represented to be.

3.      Given their small size, and the disproportionate impact toxins can have on their bodies, children are especially vulnerable to the effects of chemicals.  Parents and caregivers have a right to know that the products they buy for their children are safe—and they have a right to expect that Defendants' advertisements and other representations are truthful when they say that their products are gentle, pure, tear-free, fresh, clean, suitable for sensitive skin, and/or safe.  Thus, Plaintiff and the Class Members were damaged by Defendants' omissions and failure to warn that the Children's Personal Care Products were contaminated.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is between citizens of different states, a class action has been pled, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

5.      Venue is proper in this District under 28 U.S.C. §§ 1391(a), (b), and (c); 28 U.S.C. § 1407; and 15 U.S.C. § 22.  Defendants do substantial business in the State of New Jersey and within this Federal Judicial District, advertise in this District, receive substantial compensation and profits from the sales of its Children's Personal Care Products, and have made material omissions and misrepresentations and breaches of warranties in this District so as to subject them to personal jurisdiction in this District.

## PARTIES

6.      Plaintiff Jennifer Crouch resides in Louisville, Kentucky, and from 2006 through the present, purchased one or more of Defendants' bath products for use with her young children.  Had Defendants fully disclosed the true nature of the ingredients in the Children's Personal Care Products, Ms. Crouch would neither have purchased them nor allowed her children to be exposed to them.  As a result, Plaintiff Jennifer Crouch has been damaged.

7.      Defendant J&J is a New Jersey corporation and engages in business throughout the State of New Jersey and the United States.  J&J manufactured, marketed and/or sold Johnson's Baby Shampoo, Johnson's Moisture Care Baby Wash, and Aveeno Baby Soothing Relief Creamy Wash to Class Members during the relevant period.  According to the Campaign for Safe Cosmetics, Analytical Sciences, an independent California laboratory, found 1,4-dioxane levels of 1.1 ppm and formaldehyde levels of 210 ppm in Johnson's Baby Shampoo, 1,4-dioxane levels of 3.9 ppm in Johnson's Moisture Care Baby Wash, and 1,4-dioxane levels of 4.6 ppm in Aveeno Baby Soothing Relief Creamy Wash.  Further, upon information and belief, additional laboratory testing of Johnson's Baby Shampoo may reveal contamination with one or more substances that is prohibited when it is used as an ingredient in cosmetics.

8.      Defendant Wal-Mart is an Arkansas corporation headquartered in Little Rock, Arkansas.  Wal-Mart engages in business throughout the State of New Jersey and the United States.  Wal-Mart manufactured, marketed and sold Equate Tearless Baby Wash to Class Members during the relevant period.  According to the Campaign for Safe Cosmetics, Analytical Sciences, an independent California laboratory, found 1,4-dioxane levels of 0.63 ppm and formaldehyde levels of 290 ppm in Equate Tearless Baby Wash.

9.      Defendant Kimberly Clark is a Delaware corporation headquartered in Irving, Texas.  Kimberly Clark engages in business throughout the State of New Jersey and the United States.  Kimberly Clark manufactured, marketed and/or sold Huggies Soft Skin Shea Butter Baby Wipes to Class Members during the relevant period.  According to the Campaign for Safe Cosmetics, Analytical Sciences, an independent California laboratory, found formaldehyde levels of 100 ppm in Huggies Soft Skin Shea Butter Baby Wipes.

## FACTUAL BACKGROUND

10.     Defendants marketed their Children's Personal Care Products as safe and gentle, using descriptive passages on their product labels, such as the following: "as gentle to the eyes as pure water,"[1] "Bath-Like Fresh,"[2] "Ultra Mild" and "Hypoallergenic," and "rinses clean . . . gentle enough even for newborns,"[3] "Gently Cleans and Soothes,"[4] and "No More Tears."[5] However, laboratory tests conducted by Analytical Sciences laboratory found that these and other similar products were contaminated with formaldehyde or 1,4-dioxane—and in many cases, *both*.  Upon information and belief, additional laboratory testing of Johnson's Baby Shampoo may reveal contamination with one or more substances that are prohibited when used in cosmetics.  These Children's Personal Care Products, which contain chemicals linked to cancer and skin allergies, are anything but the safe and gentle products that Defendants claim they are.

### A.      Children are Especially Vulnerable to Toxins.

11.     Scientists and policy makers around the world now accept that children are a particularly vulnerable group deserving special attention when identifying and prioritizing which

---

[1] Johnson's Baby Shampoo product label and Internet advertisement,
http://www.johnsonsbaby.com/product.do?id=47 (last visited June 11, 2009).

[2] Huggies Soft Skin Shea Butter Baby Wipes product label,
http://www.babyuniverse.com/product/index.jsp?productId=3112896&CAWELAID=323871487 (last visited June 11, 2009).

[3] Equate Tearless Baby Wash product label,
http://www.walmart.com/catalog/detail.gsp?image=http://i.walmartimages.com/i/p/00/30/86/97/40/003086974074 5_500X500.jpg&product_id=10417283&iIndex=1&isVariant=false&corpCard=false&type=- 9223372036854775808 (last visited June 11, 2009).

[4] Aveeno Baby Soothing Relief Creamy Wash product label,
http://www.diapers.com/Product/ProductDetail.aspx?productid=5372&&cm_mmc=cse-_-googlebase-_-null-_- null&cvsfa=912&cvsfe=2&cvsfp=JJ-004 (last visited June 11, 2009).

[5] Johnson's Moisture Care Baby Wash product label,
http://www.toysrus.com/product/index.jsp?productId=2792573&CAWELAID=107527946 (last visited June 11, 2009).

environmental contaminants affect children's health.[6]  For example, in 1997, the EPA

established a policy requiring consideration of health risks to infants and children in all risk

assessments, risk characterizations, and environmental standards.

12.     Children's health must be considered separately from that of adults when

evaluating environmental factors and risks because children's diet differs from adults, and per

unit of body weight, children consume more food and water, and breathe more air.[7]  Children's

immature organs are especially sensitive and their external surfaces absorb more toxic material.

Furthermore, normal behavior of infants and toddlers encourages ingestion of non-food items,

such as personal care products, and children's rapid growth increases the long term accumulation

of chemicals.

**B.     Formaldehyde.**

13.     Formaldehyde is a colorless, flammable, strong-smelling chemical that is used to

manufacture building materials and some household products.  National Cancer Institute Fact

Sheet, Formaldehyde and Cancer: Questions and Answers, *available at*

http://www.cancer.gov/cancertopics/factsheet/risk/formaldehyde (last visited June 11, 2009).

14.     Personal care products can be contaminated with formaldehyde when it is

released from a number of common preservatives.

15.     Approximately five years ago, a working group of the World Health Organization

called the International Agency for Research on Cancer, concluded that formaldehyde is

carcinogenic to humans.  IARC Classifies Formaldehyde as Carcinogenic to Humans, Press

Release, June 30, 2004, http://www.iarc.fr/en/media-centre/pr/2004/pr153.html.

---

[6] J. Grigg, *Environmental Toxins; Their Impact on Children's Health*, 89 Arch. Dis. Child, 244 (2004), *available at*
www.adc.bmj.com/cgi/reprint/89/3/244.
[7] *Id.*

16.     The EPA has also classified formaldehyde as a probable carcinogen.  The chemical can trigger adverse skin reactions in children and adults.  Contact dermatitis specialists recommend that children avoid exposure to products containing formaldehyde.[8]

17.     When formaldehyde is present in soaps and shampoos, children and adults can be exposed by inhaling the formaldehyde that is off-gassed from the product, by ingesting it or by absorbing it through the skin.

18.     The Eleventh Annual Report on Carcinogens, published by the U.S. Department of Health and Human Services, National Toxicology Program, states: "Formaldehyde (gas) is reasonably anticipated to be a human carcinogen based on limited evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in experimental animals."[9]

19.     As a chemical pollutant, formaldehyde is an irritant and is considered a "probable" carcinogen, according to the State of New Jersey Department of Environmental Protection.  *See* Fact Sheet on Formaldehyde, *available at* http://www.state.nj.us/dep/dsr/njcrp/formaldehdye.pdf [sic].

20.     Although, using preservatives in personal care products is a common practice.  An expert review of cosmetics preservatives published in February 2009 demonstrated that preservation of cosmetics potentially leads to increased incidences of contact allergy, and that

---

[8] ENVIRONMENTAL PROTECTION AGENCY TECHNOLOGY TRANSFER NETWORK AIR TOXICS WEB SITE, FORMALDEHYDE (2007), www.epa.gov/ttn/atw/hlthef/formalde.html (last visited June 11, 2009).

[9] U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, PUBLIC HEALTH SERVICE, NATIONAL TOXICOLOGY PROGRAM, FORMALDEHYDE (GAS) CAS No. 50-00-0: REASONABLY ANTICIPATED TO BE A HUMAN CARCINOGEN, ELEVENTH REPORT ON CARCINOGENS (2002), http://ntp.niehs.nih.gov/ntp/roc/eleventh/profiles/s089form.pdf.

efficient preservation can be readily obtainable with preservative concentrations well below frequently used levels.[10]

## C.    1,4-dioxane.

21.    1,4-dioxane is a volatile, colorless liquid with a mild, ethereal odor.  According to the National Toxicology Program, 1,4-dioxane is "*reasonably anticipated to be a human carcinogen*" based on sufficient evidence of carcinogenicity in experimental animals.  National Toxicology Program, Report on Carcinogens, 11th Edition; U.S. Department of Health and Human Services, Public Health Service, National Toxicology Program, January 2005, *available at* http://ntp.niehs.nih.gov/ntp/roc/eleventh/profiles/s080diox.pdf.

22.    According to the Environmental Protection Agency ("EPA"), 1,4-dioxane is a probable carcinogen.  The federal Consumer Product Safety Commission ("CPSC") stated that "the presence of 1,4-dioxane, even as a trace contaminant, is cause for concern."

23.    1,4-dioxane is widely recognized as a carcinogen in animal studies and expert panels consider it to be a known or probable human carcinogen:

- According to the New Jersey Department of Health and Senior Services, 1,4-dioxane "should be handled as a carcinogen—with extreme caution."[11]

- The EPA classifies 1,4-dioxane as a "probable human carcinogen," based on "induction of nasal cavity and liver carcinomas in multiple strains of rats, liver carcinomas in mice, and gall bladder carcinomas in guinea pigs."[12]

- The U.S. Department of Health and Human Services, National Toxicology Program, lists 1,4-dioxane as "reasonably anticipated to be a human carcinogen."

---

[10] Michael Dyrgaard Lundov et al., *Contamination versus preservation of cosmetics:  a review on legislation, usage, infections, and contact allergy,* CONTACT DERMATITIS, 2009 60: 70-78, http://www3.interscience.wiley.com/cgu-bub/fulltext/121667177/PDFSTART?CRETRY=1&SRETRY=0.

[11] NEW JERSEY DEP'T. OF HEALTH AND SENIOR SRVS, HAZARDOUS SUBSTANCE FACT SHEET (2006), http://nj.gov/health/eoh/rtkweb/documents/fs/0789.pdf.

[12] U.S. ENVIRONMENTAL PROTECTION AGENCY, TECHNOLOGY TRANSFER NETWORK AIR TOXICS WEB SITE, 1,4-DIOXANE (1,4-DIETHYLENEOXIDE) (2000), www.epa.gov/ttn/atw/hlthef/dioxane.html.

The report notes: "There is sufficient evidence for the carcinogenicity of 1,4-dioxane in experimental animals.[13]

- According to the International Agency for Research on Cancer, an initiative of the World Health Organization, 1,4-dioxane is "possibly carcinogenic to humans.[14]

- The State of California's EPA lists 1,4-dioxane on its publically mandated annual list of chemicals known to cause cancer or reproductive toxicity.[15]

24.     1,4-dioxane is a byproduct of ethoxylation, a chemical processing technique in which cosmetics ingredients are processed with ethylene oxide.  It is relatively simple for manufacturers of ethoxylated ingredients to remove the contaminant through vacuum stripping at the end of the ethoxylation process.  According to the FDA, vacuum stripping can be done "without an unreasonable increase in raw material cost," and manufacturers can easily remove the toxic byproduct.[16]

**D.     Defendants' Children's Personal Care Products.**

- **J&J's Children's Personal Care Products.**

  - **Johnson's Baby Shampoo.**

25.     J&J's Baby Shampoo states the following on its website:

JOHNSON'S® Baby Shampoo

This mild, tearless formula baby shampoo is as gentle to the eyes as pure water

JOHNSON'S® knows bath time is a special time to share with your baby, and when the two of you are bonding, there's no room for tears. Our classic NO MORE TEARS® formula rinses quickly and easily. Leaves hair smelling fresh,

---

[13] U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, PUBLIC HEALTH SERVICE, NATIONAL TOXICOLOGY PROGRAM, 1,4-DIOXANE, CAS NO. 123-91-1:  REASONABLY ANTICIPATED TO BE A HUMAN CARCINOGEN, ELEVENTH REPORT ON CARCINOGENS (2002), http://ntp.niehs.nih.gov/ntp/roc/eleventh/profiles/s080diox.pdf.

[14] INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, 1,4-DIOXANE (GROUP 2B) 589 VOL. 71, (1999), http://monographs.iarc.fr/ENG/Monographs/vol71/mono71-25.pdf.

[15] STATE OF CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, CHEMICALS KNOWN TO THE STATE TO CAUSE CANCER OR REPRODUCTIVE TOXICITY (2006), www.oehha.ca.gov/prop65/prop65_list/files/P65single120806.pdf.

[16] U.S. FOOD AND DRUG ADMINISTRATION, GUIDE TO INSPECTIONS OF COSMETIC PRODUCT MANUFACTURERS, www.fda.gov/ora/Inspect_refigs/cosmet.html (last visited June 11, 2009).

and looking beautifully healthy and shiny. Soap free, hypoallergenic, and dermatologist tested.

http://www.johnsonsbaby.com/product.do?id=47 (visited June 11, 2009).

26.     However, the well-known claim that J&J's Baby Shampoo is "as gentle to the eyes as pure water" is wrong.

27.     According to the packaging, the product is "made from a very special combination of ingredients designed not to irritate delicate skin or eyes" and is "soap free, hypo-allergenic and dermatologist tested."  It is also "the number one choice of hospitals."  J&J also claims on its website that "safety, comfort and gentleness are always of utmost importance in our products."  *See* http://www.johnsonsbaby.com/whyJnj.do.

28.     After testing, however, Johnson's Baby Shampoo was found to be contaminated with formaldehyde and 1,4-dioxane. Analytical Sciences, an independent California laboratory, found 1,4-dioxane levels of 1.1 ppm and formaldehyde levels of 210 ppm.

29.     Upon information and belief, additional laboratory testing of Johnson's Baby Shampoo may reveal contamination with one or more substances that are prohibited when used as ingredients in cosmetics.

30.     On information and belief, none of J&J's Children's Personal Care Products list formaldehyde, 1,4-dioxane, or other toxic ingredients on the label.

31.     J&J's advertising claims appeal to parents' desire to be gentle and loving to their children—yet, J&J never discloses that Johnson's Baby Shampoo contains dangerous chemicals.

32.     J&J knew, or should have known, that Johnson's Baby Shampoo was defective and presented a serious risk to the health and safety of children.

33.     If Plaintiff and Class Members had known the true nature of Johnson's Baby Shampoo, they would not have purchased it, nor allowed their children to be exposed to it.

> ▪ **Johnson's Moisture Care Baby Wash**

34.     J & J manufactured, advertised, and sold Johnson's Moisture Care Baby Wash. J&J represented to the Plaintiff and the public that this product was safe for children.

35.     According to J&J's website, Johnson's Moisture Care Baby Wash "gently cleanses with gentle moisturizers" and should be used daily. http://johnsonsbaby.com/product.do?id=4.

36.     J&J also claims that Johnson's Moisture Care Baby Wash will "gently … nourish, soften and protect skin from dryness." *Id.*

37.     After testing, however, Johnson's Moisture Care Baby Wash was found to be contaminated with 1,4-dioxane.  Analytical Sciences, an independent California laboratory, found 1,4-dioxane levels of 3.9 ppm.

38.     J&J knew, or should have known, that its Moisture Care Baby Wash was defective and presented a serious risk to the health and safety of the children.

39.     If the Plaintiff and Class Members had known the true nature of Johnson's Moisture Care Baby Wash, they would neither have purchased it, nor allowed their children to be exposed to it.

> ▪ **Aveeno Baby Soothing Relief Creamy Wash**

40.     J&J also manufactured, advertised and sold Aveeno Baby Soothing Relief Creamy Wash. J&J represented to the Plaintiff and the public that these products were safe for children.

41.     According to Aveeno's website, the product is "[f]ragrance-free and hypoallergenic …[and] gentle enough for sensitive baby skin." http://www.aveeno.com/productDetail.do?prodid=4249.

42.     After testing, however, Aveeno Baby's Soothing Relief Creamy Wash was found to be contaminated with 1,4-dioxane.  Analytical Sciences, an independent California laboratory, detected 1,4-dioxane levels of 4.6 ppm.

43.     J&J knew, or should have known, that Aveeno Baby's Soothing Relief Creamy Wash was defective and presented a serious risk to the health and safety of the children.

44.     If the Plaintiff and Class Members had known the true nature of Aveeno Baby Soothing Relief Creamy Wash, they would neither have purchased it nor allowed their children to be exposed to it.

- **Kimberly Clark's Children's Personal Care Product**

45.     Kimberly Clark manufactured, advertised, and sold Huggies Soft Skin Shea Butter Baby Wipes.  Kimberly Clark represented to the Plaintiff and the public that this product was safe for children.

46.     Huggies' website claims that its Soft Skin Shea Butter Baby Wipes product "gently moisturizes as it cleans to help maintain naturally healthy skin." http://www.huggieshappybaby.com/products/index.aspx?uri=wipes/index.aspx.

47.     However, Analytical Sciences, an independent California laboratory, found that the wipes were contaminated with formaldehyde.  The laboratory detected formaldehyde levels of 100 ppm.

48.     Kimberly Clark knew, or should have known, that Huggies' Soft Skin Shea Butter Baby Wipes were defective and presented a serious risk to the health and safety of the children.

49.     If the Plaintiff and Class Members had known the true nature of Huggies Soft Skin Shea Butter Baby Wipes, they would neither have purchased them nor allowed their children to be exposed to them.

- **Wal-Mart's Children's Personal Care Product.**

50.     Wal-Mart manufactured, advertised and sold Equate Tearless Baby Wash.  Wal-Mart represented to the Plaintiff and the public that this product was safe for children.

51.     According to the packaging, the product is "an extra mild . . . cleanser that won't sting baby's eyes," "rinses completely," and is a "hypoallergenic formula." *See* http://www.walmart.com/catalog/product.do?product_id=10417283.

52.     On information and belief, Wal-Mart's advertising asks parents to compare its Equate Tearless Baby Wash to Johnson's Head-to-Toe Baby Wash to appeal to parents' desire for a quality product at a lower cost.  *Id.*

53.     After testing, however, Wal-Mart's Equate Tearless Baby Wash was found to be contaminated with both formaldehyde and 1,4-dioxane.  Analytical Sciences, an independent California laboratory, found 1,4-dioxane levels of 0.63 ppm and formaldehyde levels of 290 ppm.

54.     Wal-Mart knew, or should have known, that its Equate Tearless Baby Wash was defective and presented a serious risk to the health and safety of children.

55.     If the Plaintiff and Class Members had known the true nature of Wal-Mart's Equate Tearless Baby Wash, they would not have purchased it, nor allowed their children to be exposed to it.

56.     As a result of Defendants' negligence or intentional or reckless wrongdoing as set forth herein, the children of Plaintiff and the Class Members have been directly exposed on a prolonged, repeated and continuous basis, to a significantly and substantially harmful material, causing an increased risk of injury.

## **CLASS ACTION ALLEGATIONS**

57.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek

certification of a national Consumer Class (with the designation of statewide subclasses if the

Court deems necessary and appropriate) defined as follows:

> All Consumers who are residents of the United States who purchased any of the
> aforementioned Children's Personal Care Products.

> Excluded from the proposed Class are (i) any Defendants, any entity in which any
> Defendant has a controlling interest, and Defendants' legal representatives, predecessors,
> successors, and assigns; (ii) the judicial officers to whom this case is assigned; and
> (iii) any member of the immediate families of excluded persons.

58.     The proposed Class consists of many thousands of persons throughout the United

States, making individual joinder of all proposed Class Members impractical.

59.     All proposed Class Members share a united interest in the fair, just, and consistent

determination of the questions of law and fact necessary to the adjudication of Defendants'

liability, which predominate over questions affecting only individual members.  These key

common liability questions include:

a.     whether and when Defendants knew or should have known that their

Children's Personal Care Products had dangerous defects;

b.     whether Defendants knowingly, recklessly, or negligently concealed,

suppressed or failed to disclose the true ingredients and safety of their Children's Personal Care

Products from regulators, and the public;

c.     whether Defendants' conduct violated state consumer protection statutes

and state fraud and deceptive practice acts;

d.     whether Defendants breached implied warranties covering Children's

Personal Care Products;

e.      whether Defendants acted negligently by withholding from disclosure the true ingredients in their products in the sale and promotion of their Children's Personal Care Products;

f.      whether Defendants were unjustly enriched at the expense of Plaintiffs and the proposed Class Members; and

g.      whether a national class or statewide classes, and/or other subclasses, are superior, within the requirements of Rule 23(b)(3), on any of the claims.

60.    The proposed Class is also united on fundamental questions regarding its members' entitlement to damages and equitable relief, including:

a.      whether proposed Class Members are entitled to damages and/or equitable relief based on their payments for the Children's Personal Care Products;

b.      If proposed Class Members are so entitled, what is the appropriate scope, extent and measure of damages and equitable relief that should be awarded;

c.      whether the degree of reprehensibility of Defendants' conduct warrants the imposition of punitive damages under controlling authority; and,

d.      whether proposed Class Members are entitled to attorneys' fees, prejudgment interest and costs of suit.

61.    Plaintiff's claims and defenses are typical of the claims and defenses of the proposed Class because Defendants uniformly misrepresented the safety of their Children's Personal Care Products, and uniformly and actively suppressed, concealed, and failed to disclose the material risks of exposure associated with the products on the product labels and in advertisements.  Defendants' uniform conduct deprived Plaintiff and all members of the

proposed Class of their ability to make an informed decision about whether to use and/or pay for Defendants' Children's Personal Care Products.

62.     Plaintiff and her counsel will fairly and adequately assert and protect the interests of all members of the proposed Class.  Plaintiff has retained counsel who are competent and experienced in complex class action litigation, including consumer litigation.  Plaintiff has no interest adverse to those of any absent Class Members, with respect to the key common issues of Defendants' product design, labeling, and marketing.

63.     All members of the proposed Class share a common interest in the determination of all factual and legal issues pertinent to Defendants' liability through the disgorgement and restitution of Children's Personal Care Products revenue unjustly obtained by Defendants.

64.     Class certification is proper under Federal Rule of Civil Procedure 23(b)(1)(A), because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for Defendants.

65.     Class certification is proper under Federal Rule of Civil Procedure 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

66.     Class certification is proper under Federal Rule of Civil Procedure 23(b)(3) because common issues of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

67.     Class adjudication is superior to individual litigation, which would foreclose the ability of most Class Members to litigate their claims, impose an undue burden on the courts, and result in inconsistent determination of common issues.  The Court may employ issue certification under Rule 23(c)(4)(B), to address any variation of law, fact, or interest from the standpoint of fairness, efficiency, and economy, in order to avoid denial of class treatment which would require reversion to repetitive and piecemeal individual litigation.

68.     The need for Class-wide notice presents no barrier to certification because notice can be effectively disseminated to the proposed Class by techniques commonly used in consumer class actions.  Notice may be provided to proposed Class Members under the requirements of Fed.R.Civ.P. 23(c)(2) by such combination of print publication, broadcast publication, internet publication, and/or first class mail that this Court determines best comports with modern Fed.R.Civ.P. 23(c)(2) class notice form, content, and dissemination techniques, as used in other medical products liability cases and as recommended by the Manual for Complex Litigation, 4th and the Federal Judicial Center.

## COUNT I

## Breach of Implied Warranty

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.     The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Defendants marketed, promoted, manufactured and sold their Children's Personal Care Products and placed them into the stream of commerce.  Defendants knew or had reason to know of the specific use for which the

Children's Personal Care Products were purchased, and impliedly warranted that their Children's Personal Care Products were of merchantable quality and fit for such use.  Contrary to these representations, the Children's Personal Care Products were defective as they contained toxic and hazardous chemicals and were unsafe for children.

71.     At all times, New Jersey (N.J. Stat. Ann. §12A:2-314) and the following 48 states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability: Ala. Code §7-2-314; Alaska Stat. §45.02.314; Ariz. Rev. Stat. Ann. §47-2314; Ark. Code Ann. §4-2-314; Cal. Com. Code §2314; Colo. Rev. St §4-2-314; Conn. Gen. Stat. Ann. §42a-2-314; 6 Del. C. §2-314; D.C. Code §28:2-314; Fla. Stat. Ann. §672.314; Ga. Code Ann. §11-2-314; Haw. Rev. Stat. §490:2-314; Idaho Code §28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Ind. Code Ann. §26-1-2-314; Iowa Code Ann. §554.2314; Kan. Stat. Ann. §84-2-314; Ky. Rev. Stat. Ann. §355.2-314; La. Civ. Code Ann. art. §2520; 11 Me. Rev. Stat. Ann. §2-314; Md. Code Ann. §2-314; Mass. Gen. Laws Ch. 106 §2-314; Mich. Comp. Laws Ann. §440.2314; Minn. Stat. Ann. §336.2-314; Miss. Code Ann. §75-2-314; Mo. Rev. Stat. §400.2-314; Mont. Code Ann. §30-2-314; Nev. Rev. Stat. U.C.C §104.2314; N.H. Rev. Ann. §382-A:2-314; N.M. Stat. Ann. §55-2-314; N.Y. U.C.C. Law §2-314; N.C. Gen. Stat. Ann. §25-2-314; N.D. Stat §41-02-314; Ohio Rev. Code Ann. §1302.27; Okla. Stat. tit. 12A §2-314; Or. Rev. Stat. §72.3140; 13 Pa. Stat. Ann. §2314; R.I. Gen. Laws §6A-2-314; S.C. Code Ann. §36-2-314; S.D. Stat. §57A-2-314; Tenn. Code Ann. §47-2-314; Tex. Bus. & Com. Code Ann. §2-314; Utah Code Ann. §70A-2-314; Va. Code §8.2-314; Vt. Stat. Ann. 9A §2-314; W. Va. Code §46-2-314; Wash. Rev. Code §62A 2-314; Wis. Stat. Ann. §402.314; and Wyo. Stat. §34.1-2-314.

72.     As designers, manufacturers, producers, marketers and sellers of Children's Personal Care Products, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

73.     The Defendants designed, manufactured, distributed, marketed and/or sold the Children's Personal Care Products and represented to Plaintiff and the Class that they manufactured and sold high quality and safe Bath Products that complied with all applicable state and federal regulations.  Further, by selling the Children's Personal Care Products to Plaintiff and the Class, Defendants have derived a substantial amount of revenue.

74.     The Children's Personal Care Products are "goods," as defined in the various states' commercial codes governing the implied warranty of merchantability.

75.     As merchants of the Children's Personal Care Products, Defendants knew that purchasers relied upon them to design, manufacture and sell Children's Personal Care Products that were reasonably safe and would not endanger their children's health.

76.     Defendants designed, manufactured and sold Children's Personal Care Products to parents of young children, and they knew that such products would be used by young children.

77.     The Defendants specifically represented in their marketing and advertising that these Children's Personal Care Products were of high quality, safe, and complied with state and federal regulations.  Moreover, the Defendants specifically marketed and sold the Children's Personal Care Products as appropriate for infants, and young children, with marketing materials that touted the fact that the products were "tearless" and "gentle."

78.     At the time that Defendants designed, manufactured, sold and/or distributed the Children's Personal Care Products, Defendants knew the purpose for which the products were intended and impliedly warranted that the products were of merchantable quality; were free of

hazardous chemicals; were free of manufacturing defects such as the presence of formaldehyde, 1,4-dioxane, or other toxic contaminants; were free of design defects; and were safe and fit for their ordinary purpose – as bath and personal care products for young infants and children.

79.     Defendants breached their implied warranties in connection with their sale of Children's Personal Care Products to Plaintiff and members of the Class.  The Children's Personal Care Products were not safe and fit for their ordinary purposes and intended uses on children.  They were not free of defects, as evidenced by the presence of the toxic chemicals formaldehyde, and 1,4-dioxane and other toxic contaminants in products intended for direct application to children's skin and hair – all chemicals which can cause health damage, including the potential increased risk of cancer, and skin allergies.

80.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and other members of the Class' injuries include, but are not limited to the purchase price of the Children's Personal Care Products, and exposure to the toxic chemicals formaldehyde, 1,4-dioxane and other toxic contaminants in their Children's Personal Care Products.

## COUNT II

### Negligence – Design, Manufacturing Defect and Failure to Warn

81.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.     Defendants designed, manufactured, sold, and/or distributed Children's Personal Care Products to parents of young children.

83.     The Children's Personal Care Products contained formaldehyde, 1,4-dioxane, and/or other toxic contaminants when they left the hands of Defendants.

84.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of the Children's Personal Care Products, including a duty to ensure that the Children's Personal Care Products did not contain formaldehyde, 1,4-dioxane, and/or any other toxic contaminant, and a duty to warn that the Children's Personal Care Products contained these toxic and carcinogenic chemicals.

85.     Defendants failed to exercise reasonable care in the design, manufacture, sale, and/or distribution, of the Children's Personal Care Products.

86.     Specifically, Defendants were negligent in their design, manufacture, testing, inspection, sale and/or distribution of the Children's Personal Care Products in that they:

a.      Failed to use reasonable care in formulating and manufacturing the Children's Personal Care Products so as to avoid the harmful risks of possibly exposing children to formaldehyde, 1,4-dioxane, and other toxic contaminants as discussed above;

b.      Failed to conduct adequate product testing of the Children's Personal Care Products to determine the actual safety of the Children's Personal Care Products prior to sale; and

c.      Failed to accompany the Children's Personal Care Products with fair, proper, and complete ingredient labels and warnings regarding the possible adverse health effects associated with children's exposure to formaldehyde, 1,4-dioxane, and other toxic contaminants.

87.     Despite the fact that Defendants knew or should have known that the Children's Personal Care Products could cause adverse health effects, Defendants continued to market and sell the Children's Personal Care Products to consumers, including Plaintiff and members of the Class.

88.     Defendants knew or should have known that Plaintiff and members of the Class would foreseeably be put at risk to inhale, ingest, and absorb hazardous substances into their bloodstreams, and to suffer adverse health effects as a result of Defendants' failure to warn of the complete ingredients in the Children's Personal Care Products, and adverse health effects associated with children's exposure to these products, including the presence of formaldehyde, 1,4-dioxane, and other toxic contaminants in the products.

89.     Defendants' negligence proximately caused Plaintiff and the Class to be injured, through exposure to hazardous substances such as formaldehyde, 1,4-dioxane, and/or other toxic contaminants and increased risk of serious health problems.

90.     Plaintiff's negligence claims relate to injuries that she and Class members sustained as a result of the Children's Personal Care Products.

## COUNT III

### Breach of the Implied Warranties of Merchantability and Fitness for a Particular Purpose

91.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

92.     Defendants sold and promoted their Children's Personal Care Products and placed them into the stream of commerce.  Defendants knew or had reason to know of the specific use for which the Children's Personal Care Products were purchased and impliedly warranted that their Children's Personal Care Products were of merchantable quality and fit for such use.

93.     Plaintiff and the proposed Class Members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendants, and upon their implied warranty that their Children's Personal Care Products were of merchantable quality and fit for their intended use.

94.     Defendants knew, should have known, or had reason to know that Plaintiff and the Class Members were influenced to approve and purchase their Children's Personal Care Products because of Defendants' expertise, skill, judgment, and knowledge in furnishing their Children's Personal Care Products for that use.

95.     Defendants' Children's Personal Care Products were not of merchantable quality and were not fit for their intended use, because they contained substances dangerous to humans, especially small children.

96.     Defendants breached the implied warranty that their Children's Personal Care Products were of merchantable quality and fit for use in violation of the following state statutes: Ala. Code § 7-2-314, *et. seq.*, Alaska St. § 45.02.314, *et. seq.*, Ariz. Rev. Stat. Ann § 47-2314, *et. seq.*, Ark. Code Ann. § 4-2-314, *et. seq.*, Cal. Comm. Code § 2314, *et. seq.*, Co. Rev. St. § 4-2-314, *et. seq.*, Conn. Gen. Stat. Ann, § 42a-2-314, *et. seq.*, 6 Del. C. § 2-314, *et. seq*., D.C. Code § 28:2-314, *et. seq.*, Fla. Stat. Ann. § 672.314, *et. seq.*, Ga. Code. Ann. § 11-2-314, *et. seq.*, Haw. Rev. Stat. § 490:2-314, *et. seq.*, Id. Code § 28-2-314, *et. seq.*, Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, *et. seq.*, Ind. Code Ann. § 26-1-2-314, *et. seq.*, Iowa Code Ann. § 554.2314, *et. seq.*, Kansas Stat. Ann. § 84-2-314, *et. seq.*, Ken. Rev. Stat. Ann. § 355.2-314, *et. seq.*, La. Civ. Code Ann. Art. 2520, *et. seq.*, 11 Maine Rev. Stat. Ann. § 2-314, *et. seq.,* Md. Code Ann., Com. Law § 2-314, *et. seq.*, Mass. Gen. Laws Ann. Ch. 106 § 2-314, *et. seq.*, Mich. Comp. Laws Ann. § 440.2.314, *et. seq.*, Minn. Stat. Ann. § 336.2-314, *et. seq.*, Miss. Code Ann. § 75-2-314, *et. seq.*, Missouri Rev. Stat. § 400.2-314, *et. seq.*, Mont. Code Ann. § 30-2-314, *et. seq.*, Nev. Rev. Stat. U.C.C. § 104.2314, *et. seq.*, N.H. Rev. Stat. Ann. § 382-A:2-314, *et. seq.*, N.J. Stat. Ann. § 12A:2-314, *et. seq.*, N.M. Stat. Ann. § 55-2-314, *et. seq.*, N.Y. U.C.C. Law 2-314, *et. seq.*, N.C. Gen. Stat. Ann. § 25-2-314, *et. seq.*, N.D. Stat. § 41-02-314, *et. seq.*, Ohio Rev. Code Ann.

§ 1302.27, *et. seq.*, 12A Okla. Stat. § 2-314, *et. seq.*, Or. Rev. Stat. § 72.3140, *et. seq.*, 13 Pa.

Stat. Ann. § 2314, *et. seq.*, R.I. Gen. Laws § 6A-2-314, *et. seq.*, S.C. § 36-2-314, *et. seq.*, S.D.

Stat. 57A-2-314, *et. seq.*, Tenn. Code Ann. § 47-2-314, *et. seq.*, Tex. Bus. & Com. Code Ann.

§ 2.314, *et. seq.*, Ut. Code Ann. § 70A-2-314, *et. seq.*, Va. Code Ann. § 8.2-314, *et. seq.*, Vt.

Stat. Ann. § 9A-2-314, *et. seq.*, Wa. Rev. Code § 62A.2-314, *et. seq.*, W.Va. Code § 46-2-314, *et seq.*, Wis. Stat. Ann. § 402.314, *et. seq.*, Wyo. Stat. § 34.1-2-314, *et. seq.*

97.     As a proximate cause of Defendants' breach of warranty, Plaintiff and the Class

suffered ascertainable losses, injuries, and damages as specified herein in an amount to be

determined at trial.

## COUNT IV

### Products Liability

98.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully

set forth herein.

99.     At all relevant times hereto, Defendants were engaged in the business of

designing, manufacturing, assembling, and selling their Children's Personal Care Products with

the knowledge that they would be used by children and children's parents and caregivers.

100.     Defendants' Children's Personal Care Products were expected to, and did, reach

children without substantial change in their condition as manufactured and sold by Defendants.

Due to the product defects described herein, at the time the Children's Personal Care Products

reached the Plaintiff and proposed Class Members, they were in a condition not contemplated by

any reasonable person.  The Children's Personal Care Products were unreasonably dangerous to

their expected users when used in a reasonably expected manner.

101.    The Children's Personal Care Products designed, manufactured, marketed, and sold by Defendants to the Plaintiff and Class Members were in a defective condition which was unreasonably dangerous.

102.    The Plaintiff and proposed Class Members used the Children's Personal Care Products in the manner in which Defendants intended them to be used.

103.    Neither the Plaintiff nor the proposed Class Members were aware of, and could not in the exercise of reasonable care have discovered, the defective nature of Defendants' Children's Personal Care Products, nor could they have known that Defendants designed or manufactured the Children's Personal Care Products in a manner that would cause an increased risk of injury and possible toxic exposure and poisoning to their children.

104.    As a direct and proximate result of Defendants negligently placing the defective products in the stream of commerce, Plaintiff and the proposed Class Members were injured and have expenses.

105.    Defendants' Children's Personal Care Products are dangerous for their reasonably intended use, due to their defective design and manufacture, and misinformation in Defendants' marketing.

## COUNT V

### Negligence

106.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

107.    Defendants owed a duty of reasonable care to the Plaintiff and the Class Members in the design, manufacture, labeling, and marketing of their Children's Personal Care Products.

108.     Defendants breached this duty by allowing negligently produced, designed, and marketed Children's Personal Care Products into the stream of commerce.

109.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class Members were injured and have incurred expenses and will continue to incur expenses in the future.

**COUNT VI**

**Violation of the Various Unfair and Deceptive Trade Practices Acts**

110.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

111.     Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of its Children's Personal Care Products.

112.     Had Defendants not engaged in the deceptive conduct described above, Plaintiff and the Class Members would not have purchased and/or paid for the Children's Personal Care Products.

113.     Defendants' deceptive, unconscionable or untruthful representations and material omissions to consumers and the public, including Plaintiff and the Class Members, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

a.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et. seq.*;

b.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et. seq.*;

26

c.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et. seq.*;

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et. seq.*;

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770, *et. seq.,* and Cal Bus. & Prof. Code § 17200, *et. seq.*;

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et. seq.*;

g.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 2-110a, *et. seq.*;

h.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, *et. seq.*, and 2531, *et. seq.*;

i.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et. seq.*;

j.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et. seq.*;

k.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §§ 10-1-372, *et. seq.*, 10-1-392 and 10-1-420;

l.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, *et. seq.*;

m.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et. seq.*;

n.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, *et. seq.*;

o.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5-1, *et seq.*;

p.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.16, *et. seq.*;

q.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et. seq.*;

r.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.170, *et. seq.*;

s.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et. seq.*;

t.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 205A, *et. seq.*;

u.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et. seq.*;

v.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93 A, *et. seq.*;

w.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.90 1, *et. seq.*;

x.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et. seq.*; 325 F.67, *et. seq.*; and 325 F.68, *et. seq.*;

y. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et. seq.*;

z. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. § 407.010, *et. seq.*;

aa. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. § 30-14-101, *et. seq.*;

bb. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et. seq.*;

cc. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. § 59S.0903, *et. seq.*;

dd. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et. seq.*;

ee. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et. seq.*;

ff. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et. seq.*;

gg. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349, *et. seq.*, and 350-e, *et. seq.*;

hh. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*:

ii. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, *et. seq.*, and 51-15-01, *et. seq.*;

jj.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et. seq.*;

kk.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. § 15 751, *et. seq.*;

ll.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 6464.605, *et. seq.*;

mm.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et. seq.*;

nn.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et. seq.*;

oo.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et. seq.*;

pp.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et. seq.*;

qq.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et. seq.*;

rr.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et. seq.*;

ss.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, *et. seq.*;

tt.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et. seq.*;

uu.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et. seq*.;

vv.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.0 10, *et. seq*.;

ww.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et. seq*.;

xx.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq*.; and,

yy.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-101, *et. seq*.

114.    Plaintiff and members of the class relied upon Defendants' misrepresentations and/or omissions in buying Defendants' Children's Personal Care Products.

115.    Plaintiff will provide any required notice to appropriate entities regarding Defendants' unfair and deceptive trade practices.

116.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class Members have been damaged by paying for these Children's Personal Care Products.

117.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class Members are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

**COUNT VII**

**Unjust Enrichment**

118.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

119.    Defendants have been, and continue to be, unjustly enriched, to the detriment of and at the expense of Plaintiff and the Class Members, as a result of their unlawful and/or wrongful collection of, inter alia, the Plaintiff's and the Class Members' payments for Defendants' Children's Personal Care Products such that Defendants' retention of such payments is inequitable.

120.    Defendants have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Defendants' Children's Personal Care Products, and continue to so benefit to the detriment of and at the expense of the Plaintiff and the proposed Class Members.

121.    Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon them by the Plaintiff and the proposed Class Members, who seek disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from their unlawful conduct, and seek restitution and/or rescission for the benefit of Plaintiff and the proposed Class Members, in an equitable and efficient fashion to be determined by the Court.

122.    Plaintiff and the proposed Class Members are entitled to the imposition of a constructive trust upon Defendants such that their enrichment, benefit and ill-gotten gains may be allocated and distributed equitably by the Court to and/or for the benefit of the proposed Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, for herself and all others similarly situated, respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiff, and grant the following relief:

A.      Determine that this action may be maintained as a class action with respect to a national class or with subclasses corresponding to the several states' laws, pursuant to the appropriate subsections of Rule 23 of the Federal Rules of Civil Procedure; that the Court certify a class action with respect to particular issues if appropriate, and that the Court designate and appoint Plaintiff and her counsel to serve as Class Representative and Class Counsel;

B.      Declare, adjudge and decree the conduct of Defendants as alleged herein to be unlawful;

C.      Grant Class Members awards of actual, compensatory, punitive and/or exemplary damages in such amount to be determined at trial and as provided by applicable law;

D.      Grant Class Members their costs of suit, including reasonable attorneys' fees, and expenses as provided by law; and

E.      Grant Class Members such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 12th day of June, 2009.

s/Scott M. Lempert
Scott M. Lempert (SL 4238)
(A Member of the Bar of this Court)
slempert@sandalslaw.com
One South Broad Street, Suite 1850
Philadelphia , PA 19107
Tel:  (215) 825-4011 / Fax:  (215) 825-4001

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Gretchen Freeman Cappio
gcappio@kellerrohrback.com
Laura R. Gerber
lgerber@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, W A 98101
Tel:  (206) 623-1900 / Fax:  (206) 623-3384

KELLER ROHRBACK L.L.P.
David S. Preminger
dpreminger@kellerrohrback.com
275 Madison Avenue, Suite 1425
New York, NY  10016
Tel:  (212) 878-8890 / (212) 878-8895

BERGER & MONTAGUE, P.C.
Todd S. Collins
tcollins@bm.net
Neil F. Mara
nmara@bm.net
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000 / Fax:  (215) 875-4604

*Co-Counsel for Plaintiff and the Proposed Class*