NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER CROUCH, individually and on behalf of all others similarly situated, | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Civil Action No. 09-CV-2905 (DMC) |
| JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; KIMBERLY CLARK CORPORATION; WAL-MART STORES, INC.; and JOHN DOE, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Johnson & Johnson Consumer Companies, Inc. ("J&J"), Kimberly-Clark Corporation ("KC") and Wal-Mart Stores, Inc. ("Wal-Mart") (collectively, "Defendants") to dismiss the Amended Class Action Complaint ("Complaint") of Jennifer Crouch, individually and on behalf of all others similarly situated, ("Plaintiffs") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. 12(b)(1). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendants' motion to dismiss is **granted in part** and **denied in part**.

**I     BACKGROUND**

The Complaint is brought individually and on behalf of all class purchasers ("Class

Members") of J&J's Baby Shampoo, J&J's Moisture Care Baby Wash, Aveeno Baby Soothing Relief Creamy Wash, Equate Tearless Baby Wash and Huggies Soft Skin Shea Butter Baby Wipes ("products").  Plaintiffs allege that "although Defendants represented that the products they marketed, distributed, promoted, sold, and/or made were safe for children, the Children's Personal Care Products were actually contaminated with toxic chemicals linked to increased cancer risk, adverse skin reactions, and other serious health problems." (Plaintiffs' Complaint ("Pl. Compl."), ¶ 1).  Plaintiffs further allege that despite representations made by these companies that their products are safe and gentle, these products contain contaminants that are not disclosed on the label and that could otherwise have been removed pursuant to a process called vacuum stripping. (Pl. Compl., ¶¶ 2, 5).

Plaintiffs assert that independent lab tests, conducted in accordance with regulations promulgated by the Environmental Protection Agency ("EPA"), reveal that J&J's Baby Shampoo contains methylene chloride in levels as high as 1.1 ppm,  1,4 dioxane levels as high as 38 ppm, and formaldehyde levels as high as 210 ppm.(Pl. Compl., ¶¶ 3, 46).  "After testing, [J&J's] Moisture Care Baby Wash was found to be contaminated with 1,4-dioxane. Independent Lab Tests found 1,4-dioxane levels of 22 ppm." (Pl. Compl., ¶ 56). "After testing, [J&J's ] Aveeno Baby Soothing Relief Creamy Wash was found to be contaminated with 1,4-dioxane. Independent Lab Tests found 1,4-dioxane levels of 4.0 ppm." (Pl. Compl., ¶ 66). Plaintiffs also assert that each of the foregoing qualifies as a cosmetic pursuant to the Food Drug and Cosmetic Act because each is "intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance" and is not "soap." 21 U.S.C. § 321(i) (2008). (Pl. Compl., ¶¶ 50, 60, 69).

Plaintiffs also contend that "[a]fter testing, [ ] Kimberly Clark's Huggies Soft Skin Shea Butter Baby Wipes were found to be contaminated with 1,4-dioxane. Independent Lab Tests found 1,4-dioxane levels of .53 ppm." (Pl. Compl., ¶ 74).  Moreover, Plaintiffs assert that this product qualifies as a cosmetic pursuant to the Food Drug and Cosmetic Act because it is "intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance" and is not "soap." 21 U.S.C. § 321(I) (2008). (Pl. Compl., ¶ 77).

Additionally, Plaintiffs allege that "[a]fter testing, [Wal-Mart's] Equate Tearless Baby Wash was found to be contaminated with methylene chloride, 1,4-dioxane, and formaldehyde. Independent Lab Tests found methylene chloride levels of 0.57 ppm, 1,4-dioxane levels of 39 ppm, and formaldehyde levels of 350 ppm." (Pl. Compl., ¶ 83).  Plaintiffs assert that this product qualifies as a cosmetic pursuant to the Food Drug and Cosmetic Act because it is "intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance" and is not "soap." 21 U.S.C. § 321(I) (2008). (Pl. Compl., ¶ 86).

Count I of the Complaint asserts a claim for breach of implied warranty pursuant to the Uniform Commercial Code ("UCC") § 2-314. (Pl. Compl. at 102). Count II of the Complaint asserts a claim for breach of implied warranties of merchantability and fitness for a particular use. (Pl. Compl., ¶ 114). Count III of the Complaint asserts a claim for unfair and deceptive trade practices. (Pl. Compl., ¶ 121). Count IV of the Complaint asserts a claim for unjust enrichment. (Pl. Compl., ¶ 129).

## II. STANDARD OF REVIEW

"There is a fundamental difference of review under Rule 12(b)(1), where the existence of disputed facts will not preclude the court from evaluating the merits of the jurisdictional claim, and Rule 12(b)(6) where the court is required to accept as true all the allegations of the complaint and all inferences arising from them." Anjelino v. New York, 200 F.3d 73, 87 (3d Cir. 1999). "[T]he threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." Kehr Packages Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

### A. Fed. R. Civ. P. 12(b)(6)

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Bell, 550 U.S. at 555-56.

### B. Fed. R. Civ. P. 12(b)(1)

"On a Rule 12(b)(1) motion, no presumption of truthfulness attaches to the allegations of the

plaintiff." CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Id. (citing U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

### III. DISCUSSION

    A.    Standing

To bring a suit in a federal court, Plaintiffs must have standing pursuant to Article III of the United States Constitution. To establish standing under Article III, Plaintiffs must show: (1) injury in fact; (2) causation; and (3) redressability. Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. (citing AT&T Communications of N.J., Inc. v. Verizon N.J., Inc., 270 F.3d 162, 170 (3d Cir. 2001)). "The injury must affect the plaintiff in a personal and individual way." Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000); Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009).

"[O]rdinarily, one may not claim standing .... to vindicate the constitutional rights of some third party." Pitt, 215 at 362. "We apply this prudential rule against third party standing even when the requirements of Article III have been met, to 'avoid deciding questions of broad social import . . . [and] to limit access to the federal courts to those litigants best suited to assert a particular

claim.'" Id. (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100 (1979)). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Berg v. Obama, 586 F.3d 234, 239 (2009) (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). Furthermore, "[t]he standing inquiry does not change in the context of a putative class action….[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." Koronthaly v. L'Oreal, 2008 U.S. Dist. LEXIS 59024, *12 (D.N.J. July 25, 2008).

Defendants contend that "Plaintiff[s'] failure to plead any manifest, present, non-speculative injury, and failure to allege that [the products] did not provide cleansing benefits" requires the Court to conclude that Plaintiffs lack standing in the instant matter. In reliance upon this Court's decision in Koronthaly, Defendants assert that Plaintiffs' demand for a refund of the purchase price as a consequence of exposure to Defendants' products fails to establish an injury-in-fact and therefore, is not sufficient to confer standing where the alleged harm is no more than conjectural or hypothetical. As a result, Defendants claim that the absence of a cognizable injury and thereby standing in this matter requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1).

In response, Plaintiffs contend that economic injury is sufficient to confer standing in this matter, relying upon Clinton v. City of New York, 524 U.S. 417 (1998) and Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286 (3d Cir. 2005). Plaintiffs contend that where the product contains undisclosed toxins and an ingredient banned by the FDA, the injury arises at the time of purchase. In distinguishing the Koronthaly v. L'Oreal case, citing to this Court's disposition on a motion for

reconsideration, Plaintiffs assert that unlike <u>Koronthaly</u> where this Court determined that plaintiff "provided no authoritative evidence that the lead levels in defendants' lipstick products constitute[d] a dangerous amount or [were] in some way prohibited[,]" the present action involves methylene chloride, a substance banned by the FDA for use in cosmetics. 2008 U.S. Dist. LEXIS 86419, *11 (D.N.J. Oct. 24, 2008). Further, Plaintiffs contend that the EPA classifies the other chemicals at issue as probable carcinogens. Lastly, Plaintiffs assert that their claims should stand because Plaintiffs have at least raised an issue of fact with respect to whether the chemicals contained in Defendants' products are dangerous in amount.

The <u>Koronthaly</u> case involved the purchase of a lipstick containing lead, the content of which was not subject to FDA regulation. <u>Id</u>. at *2-3. However, the lead content of the lipstick appeared dangerous when compared to the lead content regulation imposed by the FDA on candy. <u>Id</u>. In the absence of an FDA regulation concerning lead content in lipstick, or other legal prohibition, the plaintiff could not "seek a remedy for a harm that she ha[d] not actually or allegedly suffered." Moreover, this Court accorded great weight to the decision in <u>Williams v. Purdue Pharma Co</u>., 297 F. Supp. 2d 171 (D.D.C. 2003), concluding that the "plaintiffs' allegation of an economic injury in a products liability action was insufficient to establish injury-in-fact" because "without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs." <u>Id</u>. at *13-14. Therefore, the <u>Williams</u> Court "remarked that benefit of the bargain injury could not sustain a claim of injury in fact." <u>Id</u>.

While the Court agrees that the assertion of an economic injury is not an automatic bar to standing, <u>Koronthaly</u> demonstrates that an exception has been recognized in the context of claims concerning defective products, absent a specific legal prohibition precluding particular ingredients

7

or usages. Insofar as Plaintiffs claims pertain to allegedly toxic chemicals that have not been banned by the FDA for use in cosmetics, including 1,4-dioxane and formaldehyde, in accordance with Koronthaly, this Court concludes that any potential injury is too remote, hypothetical and/or conjectural to establish standing in this matter. However, insofar as Plaintiffs' claims pertain to methylene chloride, a chemical explicitly banned for use by the FDA in any cosmetic, this Court declines to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. At this stage, Plaintiffs are permitted to proceed only with respect to claims concerning J&J's Baby Shampoo and Wal-Mart's Equate Tearless Baby Wash. With respect to the other allegedly defective products and their manufacturers, Plaintiffs' claims are dismissed.

      B.     Choice of Law

As a federal district court sitting in diversity, this Court must apply the choice of law rules of New Jersey, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). New Jersey's choice of law rules mandate that the determinative law is that of the state with the greatest interest in governing the particular issue. The first step is to determine whether a conflict exists between the law of interested states, and then any conflict shall be determined on an issue-by-issue basis. "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the court should avoid the choice-of-law question." Williams v. Stone, 109 F.3d 890, 894 (3d Cir. 1997). If there is a conflict, then the court must identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation. If the state's law is not related to its contacts with the litigation, then the state does not have an interest in having its law applied to the underlying issue. See Vezey v. Doremus, 510 A.2d 1187, 1189 (N.J.1986). That

is, if there is an actual conflict between the two states' laws, the court then determines "which state has the most meaningful connections with and interests in the transaction and the parties." Spence-Parker v. Del. Riv. & Bay Authority, 2009 U.S. Dist. LEXIS 75187, *20 (D.N.J. Aug. 21, 2009). Where no actual conflict of law exists, no choice of law need be made. See Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 333 (D.N.J. 2005). "If there is no actual conflict, the court must apply the law of New Jersey." LNT Merck Co. v. Dyson, Inc., 2009 U.S. Dist. LEXIS 62308, *6 (D.N.J. July 21, 2009) (citing Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006)). In that instance, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be decided under New Jersey law. See Gallerstein v. Berkshire Life Ins. Co. of America, 2006 U.S. Dist. LEXIS 64487, *3 (D.N.J. Sept. 11, 2006).

The parties' moving papers recognize that the outcome is the same regardless of whether New Jersey State Law or Kentucky State Law is applied to this diversity action. Therefore, the parties assert that no conflict of laws issue is present in the instant matter.

        1.    New Jersey State Law Breach of Warranty, Consumer Fraud and Unjust Enrichment Claims

Defendants assert that dismissal is required with respect to all Plaintiffs' claims because the claims are based on alleged harm caused by a product and as a consequence, are subsumed by the New Jersey Product Liability Act ("PLA"). Plaintiffs argue that the PLA does not subsume Plaintiffs' UCC or consumer protection claims because Plaintiffs neither assert themselves as "claimants" nor allege present or future physical injuries as a consequence of Defendants' products. Plaintiffs further allege that the heart of the present matter is the economic harm caused by Defendants' misrepresentations, omissions and breaches of warranty. Additionally, Plaintiffs

contend that the instant matter does not present a risk of double recovery, and that the claims asserted do not constitute a failure to warn cause of action pursuant to the PLA.

The New Jersey Supreme Court decision in <u>Sinclair v. Merck & Co.</u> is instructive. In <u>Sinclair v. Merck & Co.</u>, the Plaintiffs "alleged that as a result of their direct and prolonged consumption of Vioxx, they are at enhanced risk of serious undiagnosed and unrecognized myocardial infarction, commonly referred to as 'silent heart attack,' and other latent and unrecognized injuries." 195 N.J. 51, 55 (2008). In that case, the plaintiffs asserted claims for negligence, violation of the Product Liability Act, violation of the Consumer Fraud Act, breach of express and implied warranties and unjust enrichment. <u>Id</u>. In dismissing the complaint in its entirety, New Jersey Supreme Court determined the following,

> [p]laintiffs seek to avoid the requirements of the PLA by asserting their claims as CFA claims. However, the Legislature expressly provided in the PLA that claims for "harm caused by a product" are governed by the PLA "irrespective of the theory underlying the claim." N.J.S.A. 2A:58C-1b(3). We explained in <u>Lead Paint</u>, supra, that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products." 191 N.J. at 436-37. As a result, we declared that "[i]n light of the clear intention of our Legislature to include all [product liability] claims within the scope of the PLA, we find no ground on which to conclude that the claims being raised by plaintiffs, regarding an ordinary household product used by consumers, were excluded from the scope of" the PLA. We reach the same conclusion here.
>
> The language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product. The heart of plaintiffs' case is the potential for harm caused by Merck's drug. It is obviously a product liability claim. Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope. Consequently, plaintiffs may not maintain a CFA claim.

Id.<sup>1 2</sup>

Similarly, at the heart of this matter is the potential for harm caused by the defective products, J&J Baby Shampoo, J&J Moisture Care Baby Wash, Aveeno Baby Soothing Relief Creamy Wash, Kimberly-Clark's Soft Skin Shea Butter Baby Wipes and John Doe and Wal-Mart Equate Tearless Baby Wash, containing allegedly "toxic chemicals linked to increased cancer risk, adverse skin reactions, and other serious health problems." (Compl., ¶ 2). Further, Plaintiffs allege that the products were rendered useless "because they were contaminated with dangerous and potentially cancer-causing chemicals and continued use of the products would require Plaintiffs and Class Members to knowingly continue and even increase the exposure of their vulnerable infants and children to the harmful contaminants." (Compl., ¶ 2).

Consistent with the Sinclair decision, this Court concludes that the PLA subsumes all of Plaintiffs' claims, effectively precluding Plaintiffs' claims with respect to the CFA, and otherwise, in the absence of "harm" as defined by the PLA. The Court does not agree that articulating a claim in terms of pure economic harm where the core issue is the potential injury arising as a consequence of the products' allegedly harmful chemicals converts the underlying defective product claim into an independent and unrelated consumer fraud issue. Indeed, Plaintiffs' original Complaint contains a

---

1

Although this Court permitted the CFA claims to proceed in Nafar v. Hollywood Tanning Sys., Inc., in that case, the Plaintiff's claims and basis for distinction of the CFA from the PLA was the purchase of services, rather than the purchase of a defective product. 2007 U.S. Dist. LEXIS 26312, *12-14 (D.N.J. Apr. 5, 2007). CFA claims rooted in services are clearly distinguishable from claims grounded in products. The present action does not involve a claim for defective services.

2

Further, In re Ford Motor Co. E-350 Van Products, 2008 U.S. Dist. LEXIS 73690, *48 n.9 (D.N.J. Sept. 3, 2008), where the Court found the Sinclair case "inapposite" "because, by design, the PLA 'except[s] actions for harm caused by breach of an express warranty[,]' which plaintiffs expressly allege[d]." On the basis of an express warranty, the Court concluded that Sinclair decision "does not mandate dismissal of unjust enrichment and state consumer fraud claims where a party does not plead a PLA claim." Id.(internal citations omitted). Plaintiffs do not assert a claim for breach of an express warranty in the present action.

cause of action for products liability strategically omitted from the amended Complaint. Limiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA.

The assertion of a claim pursuant to the PLA is premised upon a requisite level of harm, including:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1b(2). Harm, for purposes of the PLA, does not include pure economic loss. Insofar as Plaintiffs concede that their injury is purely economic, Plaintiffs' claims cannot survive. Therefore, with respect to New Jersey law, in accordance with <u>Sinclair</u>, Plaintiffs' Complaint is dismissed without prejudice in its entirety.

        2.      Kentucky State Law Breach of Warranty, Consumer Fraud and Unjust Enrichment

Despite the parties' respective beliefs that there is no conflict of law issue present in the instant matter, it is not clear to the Court that product liability laws of Kentucky subsume related claims in the same manner as the New Jersey PLA. Therefore, upon dismissal of all New Jersey State Law claims and for purposes of inclusion, the Court will proceed by addressing the viability of Plaintiffs' claims under Kentucky State Law. If Plaintiffs have asserted viable claims pursuant to Kentucky State Law, then a conflict of law exists and the Court will undertake to ascertain which state has the superior interest in the litigation.

       i.  Consumer Fraud

 Defendants contend that Plaintiffs have no viable claims pursuant to Kentucky Consumer Protection Act ("CPA") because the Kentucky Products Liability Act ("KPLA") subsumes the CPA, because Plaintiffs fail to allege any non-speculative, ascertainable loss and finally, because Plaintiffs fail to plead their claims with particularity in accordance with Fed. R. Civ. P. 9(b).  Plaintiffs assert that claims pursuant to the CPA are not subsumed by the KPLA because Plaintiffs do not allege physical injury and because Plaintiffs are not seeking to impose liability on Defendants for representations made regarding a product different from the product purchased.

 "As used in KRS [§§] 411.310 to 411.340, a 'product liability action' shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." Monsanto Co. v. Reed, 950 S.W.2d 811, 814 (Ky. 1997) (citing KRS § 411.300(1)).  "The PLA applies to all damage claims arising from the use of products, regardless of the legal theory advanced. There is no language in the PLA which suggests that products liability actions mean only those actions based on strict liability in tort under Section 402A of the Restatement of Torts.  As we read the Act, if a claim is brought against a seller or a manufacturer of a product which is alleged to have caused injury, then the PLA applies, regardless of whether the action is founded on strict liability in tort, negligence or breach of warranty. While each of these theories of recovery in products liability cases requires proof of different elements and has different implications, [ ] their central purpose is the same: recovery of damages for injury or property damage caused by a product." Id.

"Under the Kentucky Consumer Protection Act, all 'unfair' acts or practices in the conduct of any trade or commerce are declared to be unlawful." Ford Motor Co. v. Mayes, 575 S.W.2d 480, 385 (Ky. Ct. App. 1978) (citing KRS 367.170(1)). "The term 'unfair' is defined to mean 'unconscionable.'" Id. (citing KRS 367.170(2)). "Any person who purchases goods primarily for 'personal, family or household purposes' and who thereafter suffers any ascertainable loss as a result of any act declared unlawful by KRS 367.170 is authorized to bring a civil action to recover actual damages." Id. (citing KRS 367.220(1)).

Notably, the Kentucky Court of Appeals has rejected the argument that the "Consumer Protection Act, K.R.S. 367170, was not intended to create a cause of action for bodily injury: that its purpose was to protect consumers against economic loss resulting from unethical trade practices by sellers of goods and services." AMC v. Addington, 1984 Ky. App. LEXIS 480, *13 (Ky. Ct. App. Apr. 6, 1984). "It is generally true that if injury results from an activity declared to be statutorily unlawful, then a tort has been committed. This is so notwithstanding the fact that the primary purpose of the Kentucky Consumer Protection Act is to suppress unethical trade practices for the buying public. We consider the statute to create a degree of consumer expectation as to the safety and usability of products, encompassing some mishandling and haphazards within the definition of ordinary use of a [product]." Id. at *13-14. That Court elaborated,

> [i]t is our reasoning that if one is injured from a breach of a statutory duty, in this case the duty imposed by K.R.S. 367.220[3], then that cause of action is preserved by K.R.S.

---

[3]

**K.R.S. 367.220. Action for recovery of money or property - - When action may be brought.**

(1) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by K.R.S. 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is

> 446.070[4], which [pr]ovides that a person injured by a violation of *any* statute may recover damages. While it appears that we are letting in the back door a cause of action via K.R.S. 446.070, it is only sensible that one who breaches or violates a duty imposed by law should be responsible for the consequences readily foreseeable by that failure to follow the law. The cases annotated under overwhelmingly permit recovery for personal injuries resulting from various and sundry statutory violations.

Id. The principle espoused by the Kentucky Court of Appeals appears to be the inverse of the approach adopted in New Jersey. That is, rather than the KPLA subsuming the Kentucky CPA, the expansive reach of the Kentucky CPA appears to encompass and allow for the assertion of products liability/personal injury tort claims. Therefore, with respect to Kentucky State Law, this Court will not dismiss Plaintiffs' claims on this ground.

Although foreclosed by application of the PLA in the instant case, the CFA was enacted to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services." Smith v. Alza, 400 N.J. Super. 529, 552 (2008). As articulated above, the "primary purpose of the Kentucky Consumer Protection Act is to suppress unethical trade practices for the buying public." AMC, 1984 Ky. App. LEXIS 480, at *13. The representative Plaintiff resides in Louisville, Kentucky and from 2006 to 2008 purchased Defendants' products. J&J is a New Jersey corporation engaged in business throughout the United States. Wal-

---

doing business, or in the Circuit Court in which the purchaser or lessee of goods or services resides, or where the transaction in question occurred, to recover actual damages. The court may, in its discretion, award actual damages and may provide such equitable relief as it deems necessary or proper. Nothing in this subsection shall be construed to limit a person's right to seek punitive damages where appropriate.

[4] **K.R.S. 446.070. Penalty no bar to civil recovery.** "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

Mart is an Arkansas corporation engaged in business throughout the United States. Therefore, the Kentucky State contacts in the instant matter seem to outweigh New Jersey State contacts. Kentucky State Law prevails with respect to this issue.

      ii.  Breach of Warranty

Defendants move to dismiss Plaintiffs' breach of implied warranty claims because the Complaint fails to allege that the products were not merchantable or failed to perform the function for which they were sold, because the Complaint only asserts a claim for a potential breach and finally, because the Complaint fails to allege a "particular purpose" separate and apart from the ordinary purpose. In contrast, Plaintiffs contend that the Complaint adequately asserts a claim of breach of implied warranty of merchantability because the products are adulterated with methylene chloride and for breach of implied warranty of fitness because the goods are not fit for their ordinary and/or particular use on children.

"Contract liability for breach of warranty arises not from the common law, but from the terms of the contract and the statutory provisions of the U.C.C. The concept of implied warranty in particular is governed by two express sections of the U.C.C., KRS 355.2-314 and KRS 355.2-315." Compex Int'l Co. v. Taylor, 209 S.W.3d 462, 465 (Ky. 2006). Pursuant to KRS 355.2-315, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under KRS 355.2-316[, Exclusion or Modification of Warranties,] an implied warranty that the goods shall be fit for such purpose." "Fit for ordinary purposes for which used" does not require perfection. Bickett v. W.R. Grace & Co.,1972 U.S. Dist. LEXIS 14781, *22

(W.D. Ky. 1972). "The standard is reasonable fitness for the purpose intended." Id. (internal citations omitted).

Pursuant to KRS 355.2-314, "Goods to be merchantable must be at least as such as"

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Assuming, without concluding, that the descriptive messages on the alleged defective products constitute promises or affirmations, then, in accordance with the foregoing limitations, Plaintiffs' claims for breach of implied warranties pursuant to Kentucky State Law are permitted to proceed.

Although foreclosed by application of the PLA in the instant matter, the underlying purpose of the UCC as recognized by the New Jersey Supreme Court, is "to simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to make uniform the law among various jurisdictions." N.J.S.A. 12A:1-102(1); Alloway v. General Marine Indus., L.P., 149 N.J. 620, 630 (1997). Kentucky recognizes that "one of the purposes of the UCC is 'to make uniform the law among the various jurisdictions.'" Star Bank v. Parnell, 992 S.W.2d 189, 192 (Ky. Ct. App. 1998). Kentucky also recognizes that "[a] principal purpose of the UCC is to lower transaction costs by permitting

covered parties to rely on certain objective standards of fair and reasonable dealing." A&A Mech. v. Thermal Equip. Sales, 998 S.W.2d 505, 510 (Ky. Ct. App. 1999). Similar to the foregoing analysis, Kentucky's contacts with the representative Plaintiff and the transactions that are the source of the Plaintiffs' claims favors the application of Kentucky State law over New Jersey with respect to this issue.

### iii. Unjust Enrichment

Defendants assert that where an adequate remedy at law exists, a claim seeking equitable relief is not viable. Additionally, Defendants contend that the unjust enrichment claim cannot survive because instead of being pled in the alternative, it merely incorporates other deficient claims set forth in the Complaint. Finally, Defendants argue that because Plaintiffs fail to assert that the allegedly defective products failed to perform the function for which they were sold, a claim for unjust enrichment cannot survive. By contrast, Plaintiffs assert that non-gratuitous benefits were conferred upon Defendant, the retention of which would unjustly enrich the Defendants.

"A party may state as many separate claims or defenses as it has, regardless of consistency." Holley Performance Products v. Keystone Auto Operations, Inc., 2009 U.S. Dist. LEXIS 102709, *16 (W.D. Ky. Oct. 29, 2009). In Holley, the Court concluded that "as this is a motion to dismiss, and not for summary judgment, the burden on the plaintiff is only to allege sufficient facts to show unjust enrichment is a plausible claim for relief." Id. ("The Court need not at this time determine whether or not there is in fact a viable contract claim which destroys any claims for equitable relief; the Court need only determine if all claims are sufficiently plead."). "Under Kentucky law, to succeed on a claim of unjust enrichment, the plaintiff must show the following elements: (1) a benefit conferred upon the defendant at the plaintiff's expense; (2) a resulting appreciation of the benefit by the defendant, and (3)

an inequitable retention of the benefit without payment for its value." Stonestreet Farm, LLC v. Buckram Oaks Holdings, N.V., 2007 U.S. Dist. LEXIS 31313, *15 (E.D. Ky. Apr. 16, 2007)(citing Guarantee Electric v. Bog Rivers Electric Corp., 669 F. Supp. 1371, 1381 (W.D. Ky. 1987)). Equitable remedies are only available where legal remedies are insufficient. Holley, 2009 U.S. Dist. LEXIS 102709, at *7(citing Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962)).

Plaintiffs claim to have conferred a non-gratuitous benefit upon Defendants. Consistent with the elements of a claim for unjust enrichment, it is unclear to the Court how a non-gratuitous benefit is incurred at the expense of Plaintiffs. Nonetheless, Plaintiffs allege exclusively economic injury. On this ground, there is no indication that an adequate remedy at law is unavailable to Plaintiffs. Therefore, to the extent that Plaintiffs assert a claim for unjust enrichment pursuant to Kentucky State Law, Plaintiffs' Complaint is dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion is **granted in part** and **denied in part**. Plaintiffs' Complaint is **partially dismissed without prejudice** pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated: April 15, 2010
cc: All Counsel of Record
Hon. Mark Falk, U.S.M.J.
File